**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **NIPPONKOA INSURANCE COMPANY, LTD.,** | : | |
| | : | |
| Plaintiff, | : | Case No. 2:09-CV-245 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| **NORFOLK SOUTHERN RAILWAY COMPANY,** | : | |
| | : | Magistrate Judge Terence P. Kemp |
| | : | |
| Defendant. | : | |

**ORDER**

**I. INTRODUCTION**

Plaintiff Nipponkoa Insurance Company, Ltd., brings this action for breach of contract, negligence, and related relief for damage to its insured's goods that occurred while the goods were on a train owned and operated by Defendant Norfolk Southern Railway Company. The matter is now before the Court on Nipponkoa's Motion for Partial Summary Judgment (Doc. 49) and Norfolk Southern's Motion for Summary Judgment (Doc. 50). For the reasons stated below, Nipponkoa's motion is **DENIED** and Norfolk Southern's motion is **GRANTED**.

**II. BACKGROUND**

**A. Factual History**

Imasen Bucyrus Technology, Inc. ("IB Tech") is a corporation doing business in Ohio that buys and distributes automobile parts. In May 2007, IB Tech contracted with Mitsui O.S.K. Lines, Ltd. ("MOL"), an ocean carrier, for the shipment of automobile parts from Japan to Ohio. The contract was accomplished with a single through bill of lading. A bill of lading is a contract for the transportation of goods that "records that a carrier has received goods from the party that

wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 18–19 (2004). A through bill of lading is a bill of lading "issued in a foreign country to govern a shipment throughout its transportation from abroad to its final destination in the United States." *Am. Rd. Serv. Co. v. Conrail*, 348 F.3d 565 (6th Cir. 2003).

In July 2004, MOL entered into an Intermodal Transportation Agreement ("ITA") with Defendant Norfolk Southern Railway Company ("Norfolk Southern") for a term of three years. Under the ITA, Norfolk Southern agreed to transport shipping containers along certain routes and under certain conditions. Pursuant to this contract, Norfolk Southern assumed the obligation to transport IB Tech's shipments from Los Angeles—where the containers were offloaded from MOL's ocean vessel and loaded onto Norfolk Southern's rail carrier—to Columbus, Ohio. On May 29, 2007, the train carrying IB Tech's goods derailed near Radnor, Ohio, damaging much of the shipment.

Plaintiff Nipponkoa Insurance Company, Ltd., U.S. Branch insured the shipment of IB Tech's autoparts. IB Tech sought and received payment for the damaged parts from Nipponkoa in the amount of $284,410.52. In exchange, IB Tech assigned its legal rights to Nipponkoa.

### B. Procedural History

Nipponkoa filed this suit in the Southern District of New York on February 2, 2008 (Doc. 1-2). Norfolk Southern moved to change venue to the Southern District of Ohio, and the New York district court granted that motion on March 24, 2009 (Doc. 1).

In its complaint, Nipponkoa alleged four causes of action against Norfolk Southern: (1) breach of contract under the Carmack Amendment, 49 U.S.C. §§ 11706, *et seq.*, and the

Staggers Rail Act of 1980, 49 U.S.C. § 10907; (2) common law negligence; (3) breach of bailment obligations; and (4) breach of contract under the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300 *et seq*. Nipponkoa filed its Motion for Partial Summary Judgment on damages on February 3, 2011 (Doc. 49), and Norfolk Southern filed its Motion for Summary Judgment on liability on February 4, 2011 (Doc. 50).

In its Motion for Summary Judgment, Norfolk Southern argues that it is not liable to Nipponkoa as a matter of law for the following reasons: (1) the Carmack Amendment is inapplicable; (2) Nipponkoa may not sue Norfolk Southern pursuant to an express covenant not to sue contained in the through bill of lading; (3) the lack of privity between Norfolk Southern and Nipponkoa's insured forecloses Nipponkoa's breach of contract claim; and (4) Norfolk Southern owed no duty to Nipponkoa or its insured, an essential element to Nipponkoa's negligence and bailment claims. Nipponkoa concedes that the Carmack Amendment is inapplicable in this case under *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 130 S. Ct. 2433 (2010), but contests the remainder of Norfolk Southern's arguments, contending that summary judgment on liability should be entered in its favor instead. In its Motion for Partial Summary Judgment, Nipponkoa further asserts that no genuine issues of material fact remain as to the quantity of damages Nipponkoa sustained. Nipponkoa therefore requests that the Court issue judgment in its favor in the amount of $284,410.85, plus prejudgment interest.

The Parties' motions have been fully briefed, the Court has heard oral argument, and the matter is now ripe for decision.

### III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel*, *Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); *see also Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339–40 (6th Cir. 1993). When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, the Court may rely on the evidence called to its attention by the parties. *Id*.

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad. Co. v.*

*U.S.*, 929 F.2d 240, 248 (6th Cir. 1991). The Court "must evaluate each party's motion on its own merits" and may not grant "summary judgment in favor of either party . . . if disputes remain as to material facts." *Id.*

## IV. ANALYSIS

Norfolk Southern contends that the unambiguous language of the covenant not to sue in the bill of lading establishes that Norfolk Southern is not liable to Nipponkoa for the damages to the freight. Nipponkoa contends that the covenant is unenforceable as a matter of law and that, in the alternative, Norfolk Southern is precluded from arguing that it is entitled to summary judgment on the basis of the covenant not to sue. The Court will consider each of these matters in turn.

### A. Interpretation of Covenant Not to Sue

Norfolk Southern argues that the "Himalaya Clause" in the through bill of lading shields it from liability to Nipponkoa. A Himalaya Clause, named for an English case, extends a contract's liability limitations to downstream parties. *Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 20 n.2 (2004). Norfolk Southern bases its argument on two cases: *Kirby*, 543 U.S. 14, and *Ltd. Brands, Inc. v. F.C. (Flying Cargo) Int'l Transp. Ltd.*, No. C2-04-632, 2006 U.S. Dist. LEXIS 17029 (S.D. Ohio Mar. 27, 2006) (Sargus, J.), both of which held that a bill of lading's liability limitation provision applied to inland carriers through the bill's Himalaya Clause.

The Supreme Court in *Kirby* held that courts should interpret bills of lading as they would any other contract. 543 U.S. at 31. The court's analysis of the Himalaya Clause is instructive in the case *sub judice*. In *Kirby*, the Supreme Court considered whether a bill of lading's Himalaya Clause extended the liability limitations to an inland carrier. Kirby, an Australian company, sold machine goods to General Motors for delivery in Alabama. *Kirby*, 543

U.S. at 19. Kirby hired International Cargo Control ("ICC") to deliver the goods from Australia to Alabama, memorializing the contract in a bill of lading. *Id*. The bill of lading to which Kirby agreed established liability limitations, one for the sea leg and one for the land leg. *Id*. at 19–20. The bill of lading also included a Himalaya Clause that provided that the limitations on liability applied in claims against "any servant, agent or other person (including any independent contractor) whose services have been used in order to perform the contract." *Id*. at 20.

ICC hired a German ocean shipping company to transport the cargo and issued a second bill of lading that also included liability limitations and a Himalaya Clause. *Id*. at 21. The German company in turn hired Norfolk Southern Railway Company to transport the cargo from the port to Alabama. *Id*. When the cargo was damaged during the inland leg of the journey, Kirby sued Norfolk Southern for damages. *Id.* at 18. Norfolk Southern argued that its liability was capped at the amount contained in the first bill of lading through that bill's Himalaya Clause. *Id*. at 21. The Supreme Court ruled that, although Norfolk Southern was not in privity of contract with the carrier, the bill of lading's expansively-worded Himalaya Clause extended the liability limitations to Norfolk Southern, ICC's sub-subcontractor. *Id*. at 31-32.

The Himalaya Clause in the bill of lading between IB Tech and MOL is written with language as expansive as that in *Kirby*. The bill of lading's Himalaya Clause reads as follows:

> The Merchant undertakes that no claim or allegation shall be made against any servant, agent or Sub-Contractor of the Carrier which imposes or attempts to impose upon any of them, or upon any vessel owned or operated by any of them, any liability whatsoever in connection with the Goods, and, if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing, every such servant, agent and Sub-Contractor shall have the benefit of all provisions herein benefiting [sic] the Carrier as if such provisions were expressly for their benefit; and, in entering into this contract, the Carrier, to the extent of those provisions, does so not only on its own behalf, but also as agent and trustee for such servants, agents and Sub-Contractors.

The bill of lading identifies IB Tech's parent company as the shipper, IB Tech as the consignee, and MOL as the named carrier. The term "Sub-Contractors" includes inland carriers, rail operators, and "anyone assisting in the performance of the Carriage." The term "Merchant" applies to consignees—in this case, IB Tech. Under a plain reading of this clause, then, it provides that IB Tech will bring "no claim" for liability against "any" of MOL's subcontractors, which would include Norfolk Southern. Just as the liability limitations for "any" of ICC's subcontractors capped Norfolk Southern's liability in *Kirby*, 543 U.S. at 20, 31–32, so, too, does the covenant not to sue "any" of MOL's subcontractor shield Norfolk Southern from liability in this case. *Accord St. Paul Travelers Ins. Co. v. M/V Madame Butterfly*, 700 F. Supp. 2d 496, 520–23 (S.D.N.Y. 2010) (upholding "agreement to claim against no one other than the carrier" provision in a bill of lading); *Fed. Ins. Co. v. Union Pac. R.R. Co.*, 590 F. Supp. 2d 1292, 1294–95 (C.D. Cal. 2008) (enforcing bill of lading clause providing that cargo owner will make "no claim or allegation . . . against any Person whomsoever by whom the Carriage is procured, performed or undertaken whether directly or indirectly (*including any independent contractors and any Sub-contractors of the Carrier*)" and dismissing case against carrier's subcontractor).

### B. Enforceability of Covenants Not to Sue

Nipponkoa does not argue for an alternate interpretation of the bill of lading. Instead, Nipponkoa contends that the Himalaya Clause is a release of liability and as such is unenforceable as a matter of public policy. The plaintiffs in *Flying Cargo* made a similar argument about the covenant not to sue contained in the governing bills of lading. 2006 U.S. Dist. LEXIS 17029, at *25. In that case, Limited Brands, Inc. and its subsidiaries ("Limited"), all doing business in Ohio, purchased goods from Delta Galil Industries, located in Tel Aviv, Israel. *Id.* at *2. Limited contracted with F.C. (Flying Cargo) International Transportation Ltd. for the shipment of those goods from Israel to Columbus, Ohio. *Id.* at *3. Flying Cargo then contracted

with Danmar Lines for the transportation of the goods. *Id*. Danmar, in turn, hired Cargo Connections Logistics Corporation for the inland portion of the journey, and Cargo Connections retained Palmer Industries to transport the goods from New Jersey to Columbus. *Id*. at *4.

Flying Cargo issued the bills of lading as agents for Danmar. *Id.* at *5. All of the bills of lading listed Danmar as the carrier and a subsidiary of Limited as the consignee. *Id*. All of the bills additionally included a Himalaya Clause that established that the carrier (Danmar) would be liable for the actions of its subcontractors and that the consignee (Limited) would only be able to bring a claim against the carrier. *Id*. at *6–7.

After Cargo Connections had deposited the goods in a freight station in New Jersey run by Palmer Industries, the goods were stolen. *Id*. at *4. Limited then sued Cargo Connections, Palmer Industries, Flying Cargo and unknown Doe Corporations in federal court; Limited's Amended Complaint did not include a claim against Danmar, the carrier. *Id.* at *7. The defendants moved to dismiss the complaint on the ground that the covenant not to sue in the bills of lading immunized them from liability through the operation of the Himalaya Clause. *Id*. at *20. The district court applied *Kirby* and concluded that it "compel[led] the conclusion that [the downstream carriers] may benefit from the liability limitations of the Himalaya Clause contained in the Bills of Lading negotiated by Flying Cargo with Danmar." *Id*. at *22–23. Addressing Limited's argument that the covenant not to sue the subcontractors was unenforceable under COGSA, the court noted that COGSA's prohibition on a *carrier's* total exoneration of liability was not in conflict with the bills of lading's release of liability against the *subcontractors*. *Id*. at *25.[1] The court reasoned: "That Plaintiffs have chosen not to avail themselves [of] their

---

[1] COGSA provides: "Any clause, covenant in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect."

rights against the carrier, does not render the Bills of Lading and the covenant not to sue contained therein contrary to COGSA." *Id.* at *25 n.7.

Similarly, in the case *sub judice*, the covenant not to sue exempts the carrier's subcontractors from liability to Nipponkoa or its insured but does not exempt the carrier itself. The covenant does not, therefore, leave Nipponkoa with an injury but without a remedy. This key fact serves to distinguish this case from those cited by Nipponkoa in support of its argument. Nipponkoa primarily relies on the rule stated in *United States v. Atlantic Mut. Ins. Co.,* 343 U.S. 236, 239 (1952), that "common carriers cannot stipulate for immunity from their own or their agents' negligence." In that case, the Supreme Court invalidated a "both to blame" clause that effectively "deprived cargo owners of a part of their recovery." *Id.* at 241. The clause at issue in *Atlantic Mutual* reduced the total damages that the cargo owner could recover for its loss. The clause at issue in this case, in contrast, does not affect Nipponkoa's ability to recover all of its damages from MOL, nor does it allow Norfolk Southern to escape liability given that MOL may still seek indemnification. In other words, the rule against stipulations of immunity is not contravened by a clause that creates no immunity. *Cf. CNH Am., LLC v. Int'l Union, United Auto., Aero, & Agric. Implement Workers of Am.*, 634 F. Supp. 2d 851, 857 (E.D. Mich. 2009) (explaining that the difference between a release of liability and a covenant not to sue is that a release "extinguish[es] claims against all wrongdoers" whereas a covenant not to sue "ha[s] no effect on the liability of other wrongdoers").

Nor do any of the other cases upon which Nipponkoa relies support its position. In *Demel v. Am. Airlines, Inc.*, No. 09 Civ. 5524 (PKC), 2011 U.S. Dist. LEXIS 13776, at *11–13 (S.D.N.Y. Feb. 10, 2011), the court noted that total releases of liability are unenforceable but that

---

46 App. U.S.C. § 1303(8).

limitations on the amount of damages are enforceable; the case did not concern contracts controlling *whom* an injured party may sue. Likewise, *Grace Line, Inc. v. Todd Shipyards Corp.*, 500 F.2d 361, 373 (9th Cir. 1974) is inapposite because it merely ruled in accordance with *Atlantic Mutual* that parties cannot contract for total immunization of liability. Nipponkoa also cites *Tessler Bros. (B.C.), Ltd. v. Italpacific Line,* 494 F.2d 438, 442 (9th Cir. 1974), but in that case, the Ninth Circuit held that "under certain circumstances parties to a contract of carriage may limit a stevedore's liability [as an agent for the carrier], but only if the intent to do so is clearly expressed." *Tessler Brothers* thus supports Norfolk Southern's argument, not Nipponkoa's.

     Finally, Nipponkoa cites *Royal & Sun Alliance Ins. PLC v. Ocean World Lines, Inc.*, 572 F. Supp. 2d 379 (S.D.N.Y. 2008), in which the court refused to enforce a covenant not to sue. Key to that court's holding, though, was the fact that the bill of lading between the shipper and the carrier did not contain a covenant not to sue; the only such covenant appeared in a bill of lading between the carrier and the ocean vessel. *See id.* at 396–97. The question of whether a shipper can avoid a covenant not to sue contained in a bill of lading to which it was a party was not before the court in *Royal & Sun Alliance*. Rather, the court considered whether a carrier could, as an intermediary for the shipper, bind the shipper to the covenant not to sue. *See id.* at 397 (holding that just as "Courts should not readily assume that an intermediary has authority to require the shipper to file suit . . . in a forum chosen by the downstream carrier," so should they not assume that an intermediary has the authority to require the shipper to "give up [its] right to sue"). That conclusion has no affect on this Court's analysis because in this case, Nipponkoa's insured entered into a bill of lading with MOL in which it expressly agreed not to sue anyone but MOL for damages to the freight.

In sum, Nipponkoa has not shown any legal basis for invalidating the covenant not to sue, which unambiguously provides that Nipponkoa's insured may undertake "no claim" against any of MOL's subcontractors, which includes Norfolk Southern.[2] *See Aho v. Cleveland-Cliffs, Inc.*, 219 F. App'x 419, 424 (6th Cir. 2007) (holding that covenants not to sue are enforceable so long as they are "unambiguous") (citing *Astor v. International Business Machines Corp.*, 7 F.3d 533, 540 (6th Cir. 1993)).

### C. Issue Preclusion

Nipponkoa's final argument is that Norfolk Southern is precluded from asserting its defense to liability under the doctrine of issue preclusion. Issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 128 S. Ct. 2161, 2171 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)). Nipponkoa contends that Norfolk Southern took a position in *Kirby* opposed to that it is now taking before this Court. Nipponkoa has provided the Court with excerpts of Norfolk Southern's briefs in *Kirby*. In none of them does Norfolk Southern assert that a cargo owner may sue its carrier's subcontractor where the bill of lading contains a covenant not to sue the subcontractor, the issue now before the Court. Issue preclusion is, therefore, no bar to Nipponkoa's argument.

### V. CONCLUSION

The unambiguous language of the bill of lading establishes that Nipponkoa, on behalf of its insured, may not sue MOL's subcontractors for damages to its goods in the course of

---

[2] It also includes common law claims such as negligence. Nipponkoa's assertion that it may bring suit against Norfolk Southern as a tortfeasor is correct, *see Fortis Corporate Ins., SA v. Viken Ship Mgmt. AS*, 597 F.3d 784, 791–92 (6th Cir. 2010), but does not help it avoid the consequences of the covenant not to sue.

delivery. Nipponkoa's argument that such language is unenforceable is not supported by the law, and Nipponkoa's argument that issue preclusion bars Norfolk Southern's contentions is not supported by the facts. Because Norfolk Southern's defense under the contract is dispositive of all of Nipponkoa's claims against it, the Court need not address the remainder of the Parties' arguments. The Court accordingly **GRANTS** Norfolk Southern's Motion for Summary Judgment and **DENIES** Nipponkoa's Motion for Partial Summary Judgment.

    **IT IS SO ORDERED.**

    <u>s/Algenon L. Marbley</u>
    **Algenon L. Marbley**
    **United States District Court Judge**

**DATE: July 5, 2011**